**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

**IN RE: PANERA DATA SECURITY
LITIGATION**

This Document Relates To: All Cases

Master File No. 4:24-cv-00847-HEA

**PLAINTIFFS' MOTION FOR FINAL APPROVAL**
**OF CLASS ACTION SETTLEMENT**
<u>**AND MEMORANDUM OF LAW IN SUPPORT**</u>

i

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ................................................................................................... 1

II. BACKGROUND AND PROCEDURAL HISTORY ............................................. 2

III. THE SETTLEMENT ............................................................................................ 2

    A. Settlement Benefits ....................................................................................... 2

    B. Notice and Settlement Administration Costs ................................................ 3

    C. Attorneys' Fees, Litigation Costs, and Service Awards ............................... 3

    D. Opt-Outs and Objections .............................................................................. 3

    E. Release .......................................................................................................... 4

IV. NOTICE PROVIDED SATISFIES DUE PROCESS CONSIDERATIONS ................... 5

V. LEGAL STANDARD .......................................................................................... 7

VI. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE
PURSUANT TO RULE 23(E) .............................................................................. 8

    A. Plaintiffs and Class Counsel Have Adequately Represented the Settlement Class ................ 8

    B. The Settlement Was Negotiated at Arms' Length and Aided by a Well-Respected and
Experienced Mediator .................................................................................. 10

    C. The Relief Provided for the Settlement Class is Adequate ........................... 11

    D. Proposed Settlement Class Members are Treated Equitably ........................ 12

VII. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS FOR SETTLEMENT
PURPOSES ........................................................................................................... 12

    A. The Settlement Class Meets the Requirement of Rule 23(a) ........................ 13

        1. The Settlement Class is Sufficiently Numerous ................................... 13

        2. The Commonality Requirement is Met. ............................................... 13

        3. The Typicality Requirement is Met. ..................................................... 13

        4. The Adequacy Requirement is Met. ..................................................... 14

## TABLE OF CONTENTS

**PAGE**

B.    The Settlement Class Meets the Requirement of Rule 23(b)(3). .......................................... 14

VIII.    CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

**CASES**                                                                                                    **PAGE**

*Broomfield v. Craft Brew Alliance, In*c.,
    No. 5:20-cv-01027, 2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) .......................................................6

*DeBoer v. Mellon Mortg. Co.*,
    64 F.3d 1171 (8th Cir. 1995).........................................................................................................13

*Doe v. Stephen*,
    No. 3:20-cv-00005, 2022 WL 20689731 (S.D. Iowa. Dec. 9, 2022) .................................................9

*Geier v. Alexander*,
    801 F.2d 799 (6th Cir. 1986) ..........................................................................................................4

*Grove v. Principal Mut. Life Ins. Co.*,
    200 F.R.D. 434 (S.D. Iowa 2001) ................................................................................................ 7, 13

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018) ....................................................................................................6

*In re Mexican Gov't Bonds Antitrust Litig.*,
    No. 18-cv-02830, 2021 WL 5709215 (S.D.N.Y. Oct. 28, 2021)......................................................6

*In re Target Corp. Customer Data Breach Security Litig.*,
    MDL No. 2522 (D. Minn.) ...........................................................................................................11

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
    No. 1:14-MD02583-TWT (N.D. Ga. Sept. 22, 2017)........................................................................11

*In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*,
    716 F.3d 1057 (8th Cir. 2013)................................................................................................ 4, 8, 11

*In re: Lincare Holdings Inc. Data Breach Litig.*,
    No. 8:22-cv-01472, 2024 WL 3104286 (M.D. Fla. June 24, 2024)....................................................11

*Keil v. Lopez*,
    862 F.3d 685 (8th Cir. 2017) .........................................................................................................7

*Kostka v. Dickey's Barbecue Rests., Inc.*,
    No. 3:20-cv-03424-K, 2022 WL 16821685 (N.D. Tex. Oct. 14, 2022)...................................... 10, 11

*Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*,
    921 F.2d 1371 (8th Cir. 1990)........................................................................................................7

*Marshall v. Nat'l. Football League*,
    787 F.3d 502 (8th Cir. 2015).........................................................................................................7

# TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE**

*Massiah v. MetroPlus Health Plan, Inc.*,
   No. 11-cv-05669, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012)..........................................12

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950).......................................................................................................................6

*Owens v. U.S. Radiology Specialists, Inc.*,
   No. 22-CVS-17797 (N.C. Super. Ct., Mecklenburg Cnty. May 15, 2024)...........................10

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999)..................................................................................................6, 7

*PHT Holding II LLC v. N. Am. Co. for Life*,
   No. 4:18-cv-00368, 2023 WL 8522980 (S.D. Iowa. Nov. 30, 2023).....................................9, 10

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*,
   390 U.S. 414 (1968).....................................................................................................................11

*Sanft v. Winnebago Indus., Inc.*,
   214 F.R.D. 514 (N.D. Iowa 2003) ..............................................................................................13

*Schmidt v. Fuller Brush Co.*,
   527 F.2d 532 (8th Cir. 1975).......................................................................................................11

Schneider v. Chipotle Mexican Grill, Inc.,
   336 F.R.D. 588 (N.D. Cal. 2020) .................................................................................................6

*Spegele v. USAA Life Ins. Co.*,
   No. 5:17-CV-967-OLG, 2021 WL 4935978 (W.D. Tex. Aug. 26, 2021)..............................8

*Williams v. Vukovich*,
   720 F.2d 909 (6th Cir. 1983).........................................................................................................4


**STATUTES**

                                                            **PAGE**

Fed. R. Civ. P. 23 ............................................................................................................................4

Fed. R. Civ. P. 23(a)......................................................................................................................12

Fed. R. Civ. P. 23(e)(2)(A) .............................................................................................................9

Fed. R. Civ. P. 23(e)(2)....................................................................................................................8

## STATUTES

**PAGE**

Fed. R. Civ. P. Rule 23(b)(3) ...................................................................................12

Fed. R. Civ. P. 23(e)(2)(c) ......................................................................................11

Fed. R. Civ. P. 23(a)(4) ..........................................................................................14

Fed. R. Civ. P. 23(e)(2)(D .......................................................................................12

Fed. R. Civ. P. 23(e)(3); ............................................................................................8

## OTHER AUTHORITIES

**PAGE**

Manual For Complex Litigation (Third) § 30.41 (1995)……………………………………… 7

*Newberg and Rubenstein on Class Actions* § 13:15, § 11.27 (6th ed. 2024)……………………………7, 13

Plaintiffs[1] Samantha Baldwin, Matthew Baldwin, Thomas Jones, Messiah Jordan Weddle, Gracelyn Donovan, Sydney Hollis, Robyn Campbell, Amanda Pharr, Forrest Cooley, and Taslima Aktar ("Representative Plaintiffs") respectfully submit the following Motion for Final Approval of Class Action Settlement and incorporated memorandum of law.

## I.    INTRODUCTION

After this Court granted preliminary approval on July 14, 2025, the Claims Administrator disseminated notice to the Settlement Class as set forth in the Settlement Agreement. S.A. ¶¶ 3.2-3.5. Individual notice was provided directly to Settlement Class Members first-class mail, successfully reaching 96.65% of the Settlement Class and easily meeting the due process standard. *See* Declaration of Tara Trapani of Kroll Settlement Administration LLC in Connection with Final Approval of Settlement attached hereto as **Exhibit 1** ("Admin. Decl."), ¶ 13. Settlement Class Members' support for the Settlement has been <u>overwhelmingly</u> favorable, with over 25,000 of the Settlement Class Members approving the Settlement and electing to receive compensation from the Settlement, only one Settlement Class Member objecting thereto, and only five timely seeking exclusion. *Id.* ¶ 19. This positive response weighs in favor of final approval.

For these reasons and those further set forth herein, Plaintiffs and Class Counsel respectfully submit that the Agreement meets the standards for final approval under Rule 23, and is a fair, reasonable, and adequate result for the Settlement Class. As such, Plaintiffs respectfully request that the Court grant their Motion for Service Awards, Litigation Costs, and Attorney's Fees and Memorandum of Law in Support (ECF No. 38) and enter a Judgment in a form substantially similar to the Proposed Order Granting Final Approval of Class Action Settlement submitted herewith. If finally approved, the Settlement will successfully resolve the claims of approximately 147,321

---

[1] The capitalized terms used herein shall have the same meaning as those defined in the Settlement Agreement (ECF No. 34-1 Ex. A) ("Settlement" or "S.A.") unless otherwise stated.

individuals nationwide whose private information – including their names and Social Security numbers ("Private Information") – was implicated in the Incident. S.A. ¶ 1.27. This settlement brings meaningful resolution and significant benefits to the Settlement Class without requiring further delay, risk, and expense.

## II.    BACKGROUND AND PROCEDURAL HISTORY

In the interest of judicial efficiency and brevity, for factual and procedural background regarding this Litigation, Plaintiffs respectfully refer this Court to and hereby incorporate Plaintiffs' Unopposed Motion for Preliminary Approval and to Direct Notice of Proposed Settlement to the Settlement Class and Memorandum of Law in Support (ECF No. 34) and Plaintiff's Motion for Service Awards, Litigation Costs, and Attorney's Fees and Memorandum of Law in Support (ECF No. 38). Additional facts relevant to the Court's consideration for assessing Plaintiffs' requests are in the relevant sections of this Memorandum.

## III.    THE SETTLEMENT

### A.  Settlement Benefits

The scope of the Settlement Class largely mirrors that which Plaintiffs pled in their Complaint and is defined as "all individuals to whom Panera sent notice of the Incident." S.A. ¶ 1.27.[2] For full and complete settlement and release between Plaintiffs, Settlement Class Members, and Panera, Panera has agreed to pay $2,500,000.00 into a non-reversionary Settlement Fund. *Id.* ¶ 2.1. Panera has also implemented business practice changes related to data security. *Id.* ¶ 2.11.

---

[2] The Settlement Class specifically excludes: (i) the Judge and Magistrate Judge presiding over the Lawsuits, any members of the Judges' respective staffs, and immediate members of the Judges' respective families; (2) officers, directors, members and shareholders of Panera; (3) persons who timely and validly request exclusion from and/or opt-out of the Settlement Class and the successors and assigns of any such excluded persons; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Incident or who pleads nolo contendere to any such charge. *Id.*

Under the terms of the Settlement Agreement, Settlement Class Members who submit a valid and timely Claim Form to the Claims Administrator may elect to receive: (1) reimbursement of documented out-of-pocket losses incurred as a result of the Incident, up to $500.00; (2) reimbursement for extraordinary losses, including losses from identity theft or fraud, up to $6,500.00; and (3) a Residual Cash Payment of up to $250.00. S.A. ¶¶ 2.2–2.4. Settlement Class Members who resided in California at the time of the Incident were also able to elect to receive a statutory cash payment as settlement for the California statutory claims. *Id.* ¶ 2.6. Settlement Class Members may also elect to receive three (3) years of three-bureau Credit Monitoring and Insurance Services regardless of whether they make a claim for monetary payment. *Id.* ¶ 2.3.

### B.  Notice and Settlement Administration Costs

Claims administration costs will be paid out of the Settlement Fund, including the cost of implementing and developing the Notice Program, as well as the costs of the Claims Administrator to disseminate Notice, administer the Settlement, evaluate claims, and pay Settlement Class Members who submitted timely and valid claims. *Id.* ¶ 2.1.

### C.  Attorneys' Fees, Litigation Costs, and Service Awards

On September 29 16, 2025, Plaintiffs moved for an attorneys' fee award of one-third (33.33%) of the Settlement Fund (*i.e.*, $833,250.00), expense reimbursement in the amount of $23,909.35, and Service Awards in the amount of $2,000.00 for each of the Representative Plaintiffs. (ECF No. 38). The fee motion and supporting declaration were posted to the Settlement Website so Settlement Class Members could access and review it prior to submitting an objection or requesting exclusion from the Settlement. Admin. Decl. ¶ 7.

### D.  Opt-Outs and Objections

The last day to opt-out of or object to the Settlement was October 13, 2025. *Id.* ¶ 18. As of this filing, the Claims Administrator has received only 5 timely opt-out requests and one objection. *Id.*

3

¶ 19. Such opposition amounts to "only [a] token opposition." *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (noting that twenty-six objectors out of a class of 30,000 amounted to "only token opposition"). The burden on objectors after a settlement has been preliminarily approved is high and must be more than a mere general objection. *See id.* (finding that the objections to the settlement "lacked merit" because the settlement met the requirements under Fed. R. Civ. P. 23); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983) ("An individual who objects, consequently has a heavy burden of demonstrating that the decree is unreasonable.") (collecting cases). General objections without factual or legal substantiation do not carry weight. *Id.* Objections must be supported by evidence demonstrating that some class members have actually been prejudiced by a particular term of the class settlement. *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d at 1063; *see Geier v. Alexander*, 801 F.2d 799, 809 (6th Cir. 1986) ("To allow the objectors to disrupt the settlement on the basis of nothing more than their unsupported suppositions would completely thwart the settlement process.").

Here, the objection (Admin. Decl., Ex. F; ECF No. 37) should be overruled. The objector claims that the $2.5 million settlement is inadequate. *Id.* But courts have routinely approved settlements of significantly lesser value in other similar data breach cases. *See infra*, Section VI(B). In those cases, the courts agreed that the settlements were fair, reasonable and adequate. *Id.* In the same vein, the attorneys' fees sought in this case are well within the standard fees award in data breach class action suits. (ECF No. 38, pp. 10–11). For these reasons, the Court should overrule the objection.

### E. Release

Upon entry of the Judgment, Settlement Class Members who do not submit a valid and timely request for exclusion from the Settlement Agreement will release claims against Defendant related to the Incident. The "Released Claims" are fully defined in Paragraph 1.23 of the Settlement Agreement and include all claims "based on, relating to, concerning, or arising out of the Incident." The release

4

negotiated and agreed to here is tailored to the claims that have been pled or could have been pled in the Litigation.

## IV.    NOTICE PROVIDED SATISFIES DUE PROCESS CONSIDERATIONS

On July 14, 2025, the Court preliminarily appointed Kroll Settlement Administration ("Kroll") to be the Claims Administrator. (ECF No. 35) On August 13, 2025, Kroll commenced the Notice Program. Admin. Decl. ¶ 10. Kroll disseminated the Short Form Notice via first class mail to all Settlement Class Members for whom physical mailing addresses were available within Defendant's records. *Id* ¶ 6.[3] Kroll then secured the domain name for a Settlement Website, www.PaneraSettlement.com, which "went live" on August 12, 2025, and included information about the Settlement, related case documents, and a copy of the Settlement Agreement. *Id* ¶ 7. The Settlement Website also allowed Settlement Class Members to file claim forms electronically. *Id.* Additionally, on July 14, 2025, Kroll established the toll-free number, (833) 890-4542, for Settlement Class Members to receive additional information and ask questions about the settlement. *Id* ¶ 9. As of January 14, 2026, Kroll has received 1,184 calls regarding the settlement. *Id.*

The timing of the claims process was structured to ensure that all Settlement Class Members had adequate time to review the terms of the settlement, compile documents supporting their claim, and to decide whether to submit a Claim Form, opt-out of, or object to the Settlement. The claims process has been straightforward, with Settlement Class Members able to submit Claim Forms either through the Settlement Website or by hard copy mailed to the Claims Administrator. As of January

---

[3] Defendant provided physical mailing addresses for 147,135 of the 147,145 Settlement Class Members. *Id.* ¶ 6. Before mailing out Short Form Notice, Kroll ran this information through the USPS's National Change of Address database and updated the information as necessary to ensure the notices were deliverable. *Id.* Any notices returned undeliverable with a forwarding address were reissued in accordance with the forwarding address provided. *Id.* ¶ 11. As of January 14, 2026, 15,151 Short Form Notices were returned undeliverable *without* a forwarding address. *Id.* ¶ 12. Kroll subsequently performed an advance address search and re-issued notices to 10,309 updated addresses. *Id.* Of those re-mailed, 95 were returned again as undeliverable. *Id.*

14, 2026, Kroll has received 11,826 timely Claim Forms through the mail and 11,999 timely Claim Forms filed electronically through the Settlement Website. *Id.* ¶ 15. As of January 14, 2026, Kroll received 254 late Claim Forms. *Id.* The Claims Administrator is still in the process of reviewing and validating Claim Forms. *Id.* The 23,825 timely Claims Forms received represent an astounding claims rate of 16.19% from the Settlement Class. This claims rate is more than *quadruple* the standard rate in consumer class action cases, including data breach cases. *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (granting final approval with 1.8% claims rate); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) (granting final approval with 0.83% claims rate, stating that the rate was "on par with other consumer cases, and d[id] not otherwise weigh against approval") (citing *Broomfield v. Craft Brew Alliance, Inc.*, No. 5:20-cv-01027, 2020 WL 1972505, at *7 (N.D. Cal. Feb. 5, 2020) (approving settlement with response rate of "about two percent").

The Notice Program successfully reached 96.64% of the Settlement Class, more than satisfying the due process standard. Admin Decl. ¶ 13. *See, e.g., In re Mexican Gov't Bonds Antitrust Litig.*, No. 1:18-cv-02830, 2021 WL 5709215, at *2 (S.D.N.Y. Oct. 28, 2021) (holding similar notice plan satisfied "due process"); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 219 (1950). The mailed and e-mailed notices are written in clear and concise language and reasonably conveyed the necessary information to the average class member. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152–53 (8th Cir. 1999). Settlement Class Members have been afforded a full and fair opportunity to consider the proposed Settlement, exclude themselves from the Settlement, and respond and/or appear in Court. Further, the Notice fully advised Settlement Class Members of the binding effect of the judgment on them. Admin. Decl., Exs. A, C, D, E. The content disseminated through the Notice Program was more than adequate. *See Petrovic*, 200 F.3d at 1153 ("In our case the mailed notice provided a reasonable summary of the stakes of the litigation, and class members could easily acquire more detailed information,

including data on potential individual awards, through the telephone number that was provided. Due process requires no more.").

In sum, the Notice sent via first-class mail to Settlement Class Members who could be identified with reasonable effort was "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

## V.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(e)(2), a court must review a class action settlement "to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *Marshall v. Nat'l. Football League*, 787 F.3d 502, 509 (8th Cir. 2015) (citation omitted).

The approval of any proposed class action settlement is typically exercised in the two-step process of "preliminary" and "final" approval. Manual For Complex Litigation (Third) § 30.41, at 236 (1995). The first step of preliminary approval has already been met. On July 14, 2025, the Court found that the settlement was fair, reasonable, and adequate warranting preliminary approval. (ECF No. 35).

Courts consistently favor settlements of disputed claims. *See, e.g.*, *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990) ("The law strongly favors settlements ... [and][c]ourts should hospitably receive them."). There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval. *See* 4 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 13:15 (6th ed. 2024); *Little Rock Sch. Dist*, 921 F.2d at 1391 (same). Indeed, when experienced counsel supports a settlement, as they do here, their opinions are entitled to considerable weight. *Keil v. Lopez*, 862 F.3d 685, 698 (8th Cir. 2017). In contrast, "judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic*, 200 F.3d at 1148-49 (citation omitted); *Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 445 (S.D. Iowa 2001).

7

Here, nothing "has occurred that would alter the Court's initial assessment that the Settlement is fair, reasonable, and adequate." *Spegele v. USAA Life Ins. Co.*, No. 5:17-CV-967-OLG, 2021 WL 4935978, at *3 (W.D. Tex. Aug. 26, 2021); *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d at 1063. In fact, the response of the Settlement Class Members to the settlement (only 5 requests for exclusion and 1 objection out of a Settlement Class of 147,145 Settlement Class Members) further underscores that the settlement is, in fact, fair, reasonable, and adequate and should receive final approval.

## VI.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE PURSUANT TO RULE 23(E)

The general standard for final approval of a proposed settlement of a class action under Rule 23(e)(2) remains whether it is "fair, reasonable and adequate." To make that determination, Rule 23(e)(2) provides the following factors:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

### A.  Plaintiffs and Class Counsel Have Adequately Represented the Settlement Class

In determining whether to approve a class action settlement, a court should first consider whether class representatives and class counsel "have adequately represented the class." Fed. R. Civ.

8

P. 23(e)(2)(A); *see also PHT Holding II LLC v. N. Am. Co. for Life*, No. 4:18-cv-00368, 2023 WL 8522980, at *3 (S.D. Iowa. Nov. 30, 2023) ("As it pertains to the Class Representative, the inquiry is two-fold: (1) whether it shares common interests with the other class members; and (2) whether it vigorously pursued the interests of the class through qualified counsel.").

Here, Plaintiffs' interests are aligned with those of the Settlement Class in that they seek relief for alleged injuries arising out of the Incident, which led to the alleged compromise of Plaintiffs' and Settlement Class Members' data in the same manner. Under the terms of the Settlement Agreement, Plaintiffs and Settlement Class Members will all be eligible for monetary relief from the Settlement Fund. As such, Plaintiffs have an interest in obtaining the largest possible recovery from Defendant. Plaintiffs have maintained contact with Class Counsel, have reviewed filings in the Litigation, and have no conflicts with the proposed Settlement Class.

Likewise, Class Counsel have also "adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). When "[t]here is no indication that any conflicts of interest or other deficiencies have arisen in counsel's representation of the class" and "counsel clearly devoted substantial time and energy to the case," courts routinely find that class counsel have adequately represented the class. *Doe v. Stephen*, No. 3:20-cv-00005, 2022 WL 20689731, at *3 (S.D. Iowa Dec. 9, 2022). Here, Class Counsel has extensive class action and complex litigation experience and used this expertise to pursue Plaintiffs' claims and ultimately negotiate a favorable recovery for the Settlement Class. Declaration of Ryan D. Maxey in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement attached hereto as **Exhibit 2** ("Counsel Decl."), ¶ 2; (ECF No. 17, Exs. 1–2). At all times, Class Counsel was fully informed about the facts, risks, and challenges of this action and had sufficient basis on which to negotiate a very significant settlement.

9

**B. The Settlement Was Negotiated at Arms' Length and Aided by a Well-Respected and Experienced Mediator**

Soon after Plaintiffs filed their Complaint, the Parties by and through their respective counsel, began discussing the possibility for resolution and agreed to explore the possibility of early resolution. *Id.* ¶ 3. Over the next few months, the Parties engaged in extensive arm's length settlement negotiations and informal discovery. *Id.* In addition to and in preparation for negotiations, in order for the Parties to evaluate the strengths and weaknesses of Plaintiffs' claims and Defendant's defenses, Class Counsel researched publicly available information related to the Incident, the merits of Plaintiffs' claims, issues relating to class certification, and discussed and disputed, with counsel for Defendant, their respective positions regarding the same. *Id.* ¶ 4. The Parties also engaged in extensive factual and legal research on such issues and attended a full-day mediation session with Jill Sperber, Esq. of Judicate West on December 18, 2024. *Id.* ¶ 5. Following mediation and continued adversarial and extensive arms-length negotiations, the Settlement Agreement was consummated. *See PHT Holding II LLC*, 2023 WL 8522980, at *3 ("There is an assumption of fairness when a settlement is reached after arm's-length negotiations.").

As such, there is nothing to suggest that the Settlement Agreement was the result of fraud or collusion. Rather, this Settlement Agreement, which achieves a value measurement of $16.96 per Settlement Class Member,[4] falls directly in line with, and in many cases exceeds, the results achieved in other favorable data breach class action settlements. *See e.g., Owens v. U.S. Radiology Specialists, Inc.*, No. 22-CVS-17797 (N.C. Super. Ct., Mecklenburg Cnty. May 15, 2024) (approving settlement valued at $3.88 per class member); *Kostka v. Dickey's Barbecue Rests., Inc.*, No. 3:20-cv-03424-K, 2022 WL

---

[4] This measurement is not a projection of the amount that each Settlement Class Member who submits a valid and approved Claim Form will receive. Rather, this calculation is a way for the Court to evaluate the reasonableness of the Settlement Agreement reached here by offering a comparison of the value achieved per Settlement Class Member to other settlements of cases involving similar settlement class sizes and causes of action.

16821685 (N.D. Tex. Oct. 14, 2022) (approving settlement valued at $3.24 per class member); *In re: Lincare Holdings Inc. Data Breach Litig.*, No. 8:22-cv-01472, 2024 WL 3104286 (M.D. Fla. June 24, 2024) (approving settlement valued at $2.50 per class member); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD02583-TWT (N.D. Ga. Sept. 22, 2017) (approving settlement valued at $0.51 per class member); *In re Target Corp. Customer Data Breach Security Litig.*, MDL No. 2522 (D. Minn.) (approving settlement valued at $0.10 per class member).

It is the opinion of Class Counsel, based on their experience and investigation, that the Settlement Agreement presents a favorable result for the Settlement Class.

## C. The Relief Provided for the Settlement Class is Adequate

Federal Rule of Civil Procedure 23(e)(2)(c) requires examination of the relief provided by the settlement. While Plaintiffs are confident in the merit of their claims, they must take into account the risk, expense, and delay of protracted litigation, trial, and a potentially lengthy appeal that would severely delay any recovery for Settlement Class Members for several more years if this Litigation did not settle. This risk of delay weighs in favor of granting final approval of the Settlement Agreement. *See, e.g.*, *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968) (judge must consider "the complexity, expense, and likely duration" of the litigation); *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d at 1063 (noting that "class actions place an enormous burden of costs and expenses upon the parties.") (quoting *Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 535 (8th Cir. 1975)). Under these circumstances, the benefits of a guaranteed recovery today, as opposed to an uncertain result years in the future, are readily apparent. Indeed, the monetary value of the Settlement Fund is $2,50,000.00, a significant figure which, as set forth in the Settlement Agreement, is available to Settlement Class Members to make claims for monetary relief. S.A. ¶¶ 2.2-2.8. Moreover, Settlement Class Members will benefit from the business practice changes relating to data security that Defendant has implemented. *Id.* ¶ 2.11.

11

Notably, when, as here, a settlement "assures immediate payment of substantial amounts to class members, even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road, a settlement is reasonable under this factor." *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-cv-05669, 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012) (citations omitted). The foregoing therefore demonstrates that the Settlement Agreement is fair, reasonable, and adequate.

### D.  Proposed Settlement Class Members are Treated Equitably

Rule 23(e)(2)(D) instructs the court to consider whether the settlement agreement "treats class members equitably relative to each other." Here, the proposed settlement treats Settlement Class Members equitably because they all have the option to make a claim for any of the applicable benefits with the singular exception of California residents who may submit an additional claim for monetary relief for their California-specific statutory claims. S.A. ¶¶ 2.2-2.8.

## VII.  THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES

To achieve certification, Rule 23(a) requires: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). After satisfying all requirements under Rule 23(a), the settlement class must then satisfy Rule 23(b)(3), which requires the court to determine whether (1) questions of law or fact common to class members predominate over questions affecting only individual members, and (2) a class action is superior to the other methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. Rule 23(b)(3).

Previously, the Court found that "the Settlement Class satisfies the requirements of Federal Rule of Civil Procedures 23(a)" and "the requirements of Federal Rule of Civil Procedures 23(b)(3)[.]" (ECF No. 35). Since then, there has been no intervening change in law or fact to disturb the Court's initial finding. Counsel Decl. ¶ 8.

12

As discussed *infra*, the settlement class certification requirements are met and Defendant consents to provisional certification of the Settlement Class for settlement purposes. *See* Newberg § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only.").

### A. The Settlement Class Meets the Requirement of Rule 23(a).

#### 1. The Settlement Class is Sufficiently Numerous.

Kroll received a list from Defendant identifying "all individual to whom Panera sent notice of the Incident," (*i.e.*, the Settlement Class). *Id.* ¶ 1.27. After de-duplication and routine data hygiene, Kroll identified 147,145 unique Settlement Class Member records. Admin Decl., ¶ 6. A class comprised of over a one hundred thousand members is clearly numerous and renders joinder impracticable. *See Sanft v. Winnebago Indus., Inc.*, 214 F.R.D. 514, 521 (N.D. Iowa 2003).

#### 2. The Commonality Requirement is Met.

The commonality requirement of subsection (a)(2) is met here. The Consolidated Class Action Complaint identifies a number of questions of law and fact common to all potential Settlement Class Members. Dkt. No. 20, ¶ 218. Such identification of alleged common issues is sufficient to satisfy the commonality requirement here. *Grove*, 200 F.R.D. at 440.

#### 3. The Typicality Requirement is Met.

The claims of Plaintiffs and each of the Settlement Class Members are predicated on the alleged conduct of Panera with respect to the Incident. These claims are common to all Settlement Class Members. Accordingly, the common issues necessarily share the same degree of centrality to the Representative Plaintiffs' claims. *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). As such, Plaintiffs can reasonably be expected to advance the interests of all absent Settlement Class Members by settling the liability issues.

13

### 4.  The Adequacy Requirement is Met.

Plaintiffs have taken an active and necessary role in aiding Class Counsel in litigating this case and representing the interest of absent Settlement Class Members. Plaintiffs provided information to Class Counsel that formed the basis of the claims in the Litigation, including the individual notices of the Incident and their personal experiences and alleged injuries arising therefrom. Counsel Decl. ¶ 10. There is also nothing to suggest that, for purposes of this Settlement Agreement, Plaintiffs have interests antagonistic to those of absent Settlement Class Members in pursuit of the legal claims in the Litigation. *Id.* ¶ 11. Rather, Plaintiffs and absent Settlement Class Members are interested in pursuing remedies for claims concerning the Incident. *Id.* To that end, Plaintiffs have obtained an advantageous settlement that provides substantial monetary compensation and other relief to all Settlement Class Members.

Class Counsel are accomplished litigators, particularly in the field of data breach litigation. (ECF No. 17, Exs. 1–2). Class Counsel worked together to research the facts of this Litigation, prepare the Plaintiffs' claims against Panera, consolidate the numerous related actions into one, and work with opposing counsel to engage in meaningful informal discovery and settlement discussions. (ECF No. 38-1, ¶¶ 5–10). From their experience, expertise, time, and resources, they were able to secure a favorable class action settlement that is memorialized in the Settlement Agreement. *Id.*; Counsel Decl. ¶¶ 3–4. There is no indication that they have a conflict of interest or might possibly do anything other than adequately represent the interests of the Settlement Class. Accordingly, the requirements of Rule 23(a)(4) have been met.

### B.  The Settlement Class Meets the Requirement of Rule 23(b)(3).

Class certification is further appropriate under Rule 23(b)(3) because the Settlement Class Members' personal information was allegedly accessed and/or exfiltrated from Defendant's network

14

as a result of the Incident. For purposes of settlement, the claims being resolved share sufficient commonality to warrant certification for settlement purposes.

With respect to superiority, the settlement renders class action treatment cost-effective and efficient relative to other potential avenues of recovery for Settlement Class Members and avoids the risk of inconsistent and varying adjudications with respect to individual members of the Settlement Class. By reason of the Settlement, over a one hundred thousand Settlement Class Members across the United States can obtain substantial monetary benefits and other relief in this class action, whereas litigation of multiple actions in any other judicial avenue for relief – either in this Court or elsewhere – would waste judicial resources. Moreover, it would be impractical for each individual Settlement Class Member to bring his or her claim. As such, the most efficient way of resolving these claims is through a single class action settlement. As such, Rule 23(b)(3) is also satisfied.

## VIII.   CONCLUSION

Plaintiffs and Class Counsel negotiated a fair, adequate, and reasonable settlement with Defendant and its counsel that guarantees Settlement Class Members significant benefits in the form of monetary compensation and credit monitoring and insurance services. Based on the above reasons, Plaintiffs respectfully request that the Court enter an order granting final approval to the settlement (a) certifying the Settlement Class; (b) finally appointing Samantha Baldwin, Matthew Baldwin, Thomas Jones, Messiah Jordan Weddle, Gracelyn Donovan, Sydney Hollis, Robyn Campbell, Amanda Pharr, Forrest Cooley, and Taslima Aktar as Representative Plaintiffs; (c) finally appointing M. Anderson Bearry of Emery Reddy, P.C. and Ryan Maxey of Maxey Law Firm, P.A. as Class Counsel; and (d) granting Plaintiffs' requested attorneys' fee award of one-third of the Total Settlement Consideration (*i.e.*, $833,250.00), reimbursement of expenses in the amount of $23,909.35, and Service Awards of $2,000.00 for each of the Plaintiffs, (for a total of $20,000.00).

DATED: January 15, 2026                 Respectfully submitted,

                                        */s/ M. Anderson Berry*
                                        M. Anderson Berry (pro hac vice)
                                        **EMERY REDDY, PC**
                                        600 Stewart Street, Suite 1100
                                        Seattle, WA 98101
                                        916.823.6955 (Tel)
                                        206.441.9711 (Fax)
                                        *anderson@emeryreddy.com*

                                        Ryan D. Maxey
                                        **MAXEY LAW FIRM, P.A.**
                                        107 N. 11 St., #402
                                        Tampa, Florida 33602
                                        Tel: (813) 448-1125
                                        Email: ryan@maxeyfirm.com

                                        *Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2026, I electronically filed the foregoing document with the Clerk

of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of

record.

                                        */s/ M. Anderson Berry*
                                        M. Anderson Berry, Esq.

16